UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-25101-CIV-WILLIAMS/MCALILEY

GIESELYS ARVELO,

    Plaintiff,

v.

KILOLO KIJAKAZI,
    Acting Commissioner of Social Security,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

Pending before the Court is Plaintiff's Motion for Summary Judgment (ECF No. 10), and Defendant's Motion for Summary Judgment. (ECF No. 14). This matter is fully briefed, and the Honorable Kathleen M. Williams referred it to me for a report and recommendation. (ECF Nos. 2, 15, 16). For the reasons set forth below, I respectfully recommend that Plaintiff's Motion for Summary Judgment be denied, and Defendant's Motion for Summary Judgment be granted.

**I.    Background**

Plaintiff filed for disability insurance benefits and supplemental social security income in June 2018, with an alleged onset date of January 1, 2018. Tr. 171-74.[1] Plaintiff's application was denied initially and on reconsideration. Tr. 63-85. At Plaintiff's request, an Administrative Law Judge ("ALJ") held a hearing on May 8, 2020, which Plaintiff

---

[1] Citations to the transcript of proceedings before the Social Security Administration, filed at ECF No. 9, are to "Tr. [#]."

1

attended along with her attorney. Tr. 36-62. Plaintiff testified at the hearing, along with a vocational expert. *Id*. On May 20, 2020, the ALJ issued a written decision in which he concluded that Plaintiff was not disabled within the meaning of the Social Security Act. Tr. 15-27. The Appeals Council denied Plaintiff's request for review of this decision, making the ALJ's decision the final decision of the Commissioner. Tr. 1-5.

As relevant here, the ALJ found that Plaintiff has the severe impairments of Parkinson's disease and obesity, but found that Plaintiff's depression, anxiety, and panic disorder cause no more than minimal work limitations and, therefore, are non-severe impairments. Tr. 17-18. The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work, except that she can frequently handle objects, finger, or feel. Tr. 19. The ALJ supported the RFC with a thorough explanation of Plaintiff's longitudinal treatment records and the opinion evidence submitted to the ALJ. Tr. 19-22.

Based on testimony from the vocational expert, the ALJ found that Plaintiff can perform her past relevant work as an accountant, which is classified as a sedentary position. Tr. 22. Plaintiff testified that she worked as an accountant for thirty (30) years for Bishop Catholic Association in Puerto Rico. Tr. 47. Plaintiff explained that she resigned from that position to move to Miami to receive treatment for her Parkinson's disease. Tr. 49 ("Q: So you moved to Miami to receive treatment for your Parkinson's correct? A: That's correct. Q: And you asked for permission from your company to move to Miami to receive the treatment, correct? A: That's correct. Q: And they denied your request, so you had to resign, correct? A: Correct."). In light of the ALJ's finding that Plaintiff can perform her

past relevant work as an accountant, the ALJ concluded that Plaintiff is not disabled. Tr. 22.

The Court has thoroughly reviewed the entire record in this action, which includes Plaintiff's medical records and the transcript of the hearing before the ALJ. As I address the issues, I will reference the administrative record as it is relevant.

**II.     Analysis**

   **A.     Standard**

The Social Security Administration has established a five-step sequential analysis that an ALJ must follow to determine whether an individual is disabled. In conducting this analysis, the ALJ must evaluate whether "(1) the claimant is currently engaged in substantial gainful activity, (2) the claimant has a severe impairment or combination of impairments, (3) the impairment meets or equals the severity of the specified impairments in the Listing of Impairments, (4) the claimant can perform any of his or her past relevant work despite the impairment given [her] residual functional capacity, and (5) there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Kirby v. Comm'r of Soc. Sec.*, 819 F. App'x 828, 832 (11th Cir. 2020) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)). "Step four is a two-prong analysis where the ALJ must assess: (1) the claimant's residual functional capacity ("RFC") and (2) the claimant's ability to return to her past work." *Klucsarits v. Comm'r of Soc. Sec.*, No. 20-14376-Civ, 2022 WL 1664133, at *3 (S.D. Fla. April 13, 2022).

Plaintiff challenges the ALJ's finding at Step Two that her mental impairments are non-severe, as well as the ALJ's analysis of the RFC at Step Four of the sequential analysis. Plaintiff has the burden to prove that the ALJ erred. *See Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278 (11th Cir. 2020) ("A claimant bears the burden at the first four steps…").

Specifically, Plaintiff must demonstrate that the ALJ's findings that she challenges are not supported by substantial evidence. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The standard is, in effect, a presumption in favor of the ALJ's findings of fact. In other words, so long as the ALJ's decision is supported by substantial evidence, the court must affirm, "even if the court finds that the proof preponderates against the decision." *Perez v. Comm'r of Soc. Sec.*, No. 6:06-CV-1648-ORL-19KRS, 2008 WL 191036, * 5 (M.D. Fla. Jan. 22, 2008). I find that Plaintiff failed to meet this burden of proof.

1. Substantial Evidence Supports the ALJ's Finding that Plaintiff's Mental Impairments are Not Severe

In her Motion for Summary Judgment, Plaintiff argues that her depression, anxiety, and panic disorder cause significant work-related limitations. (ECF No. 10 at 19-25). Plaintiff contends that the ALJ erred in finding that those impairments are not severe because "[t]here are many abnormal findings contained within the same record(s) [that the ALJ cited] which are ignored and unexamined in the [ALJ's] decision." (*Id*. at 21). Abnormal findings do not necessarily indicate the existence of significant work-related limitations. "[P]roof of the mere existence of impairments does not prove the extent to

4

which they limit a claimant's ability to work." *Hutchinson v. Astrue*, 408 F. App'x 324, 326 (11th Cir. 2011).

Plaintiff supports her argument by directing the Court to certain symptoms documented in the medical records that the ALJ cited. (ECF No. 10 at 21-22). However, there is no indication in those records – and Plaintiff points to none – that these symptoms significantly limited or interfered with her ability to work. *Smith v. Comm'r of Soc. Sec.*, 501 F. App'x 875, 879 (11th Cir. 2012) ("While [plaintiff's] medical records reflect that [she] had a history of anxiety and depression for which she was prescribed Xanax and Zoloft, nothing in the record indicates that [she] experienced any effects from these mental impairments that could be expected to interfere with her ability to work.").

Moreover, the ALJ provided a thorough discussion of Plaintiff's mental health treatment records, and correctly noted that those medical records most often reflect that Plaintiff's memory, concentration, and attention were within normal limits, her thought process remained intact, and she exhibited normal psychomotor activity. Tr. 18. The ALJ did make an error when he characterized Plaintiff's insight and judgment as "good," *id.*, when the medical records consistently describe her insight and judgment as "fair." Tr. 403, 405, 407, 409, 479, 481, 483, 485, 487, 489. This discrepancy, however, is unimportant because courts routinely uphold an ALJ's determination that a claimant's mental impairments are not severe when medical records reflect that the claimant has "fair" insight and judgment. *See e.g., Willis v. Berryhill*, No. 5:18-cv-277, 2019 WL 2755026, at *3-5 (M.D. Fla. July 2, 2019); *Russo v. Comm'r of Soc. Sec.*, 21-14155-CIV, 2022 WL 4128866, at *2 (S.D. Fla. Sept. 12, 2022).

In sum, substantial evidence supports the ALJ's finding that Plaintiff's mental impairments are non-severe.

### 2. The RFC is Supported by Substantial Evidence

Plaintiff asserts that substantial evidence does not support the ALJ's RFC determination for two reasons. First, Plaintiff argues that the ALJ erred by failing to provide a mental residual functional capacity assessment or include any mental limitations in the RFC. (ECF No. 10 at 25). Second, Plaintiff argues that the ALJ improperly rejected a Residual Functional Capacity Questionnaire that her neurologist completed, which contained greater limitations than reflected in the RFC. (*Id*. at 27-29). I do not agree.

The RFC is the ALJ's assessment, based on all relevant evidence, of a claimant's ability to work despite her impairments. *Lewis*, 125 F.3d at 1440. "The ALJ is not required to specifically discuss each piece of evidence so long as the decision shows that [s]he considered the claimant's condition as a whole." *Alvarez v. Comm'r of Soc. Sec.*, 848 F. App'x 823, 824 (11th Cir. 2021) (citing *Mitchell v. Comm'r. of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014)). In crafting the RFC, the ALJ must consider all of the claimant's impairments, regardless of their severity. 20 C.F.R. 404.1545(a)(2) ("We will consider "all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe'…when we assess your residual functional capacity.").

### a. Mental impairments

Plaintiff contends that the ALJ failed to consider her mental impairments at Step Four because, first, the RFC lacks a discussion of her mental health treatment records.

6

(ECF No. 10 at 25-26). Plaintiff overlooks the ALJ's statement in his RFC analysis that he considered "the entire record," as well as "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence…." Tr. 19. That the ALJ did this is reflected in his RFC analysis, which includes the ALJ's review of the opinion evidence of the State agency psychological consultants. Tr. 21. When the ALJ explained why he found those opinions persuasive, he referred to the medical records of her mental impairments, thereby demonstrating his consideration of those records. *Id*. No doubt, it would have been the better practice for the ALJ to explicitly discuss the mental health records he previously identified, within his RFC analysis, rather than simply reference that earlier discussion. Here, however, the ALJ's decision reflects that he considered Plaintiff's mental impairments when he determined the RFC.

    Second, Plaintiff argues that the RFC is not supported by substantial evidence because it does not include findings regarding Plaintiff's mental capabilities. Plaintiff does not explain what mental limitations the ALJ should, but did not, include in the RFC, nor does she identify particular records the ALJ should have referenced in his decision. (ECF No. 10 at 25-26, *generally*). Plaintiff does refer to a hypothetical posed to the vocational expert which included a limitation to detailed but uninvolved instructions, and the VE's testimony that this limitation would render Plaintiff unable to perform her past job as an accountant. (ECF No. 10 at 26). To the extent that Plaintiff argues the RFC should have included this limitation, she fails to meet her burden.

Plaintiff directs the Court to a Mental Impairment RFC Questionnaire that a psychologist, Dr. Levine, completed in April 2020, which opines that Plaintiff's ability to understand and carry out very short and simple instructions is "fair" and that she has "deficits in motivation, coping with interpersonal stress, [and] concentration [which] impair her ability to maintain competitive employment." Tr. 541. Dr. Levine also opined that Plaintiff had suicidal ideation. Tr. 540. This questionnaire is insufficient to meet Plaintiff's burden here because, as the ALJ found, it is inconsistent with the treatment notes in the record, "which document largely unremarkable mental status examination findings." Tr. 21.

Moreover, the majority of Plaintiff's medical records reflect that she reported improvement in her mental condition. *See* Tr. 405 ("Patient reports: Feeling better"); 407 ("Patient reports: Feeling better"), 479 ("Patient reports: I am more relax[ed]"); 483 ("Patient reports: I am less anxious"); 489 ("Patient reports: I feel better"); 491 ("Patient reports: I feel STABLE"); 497 ("Patient reports: I am more calm"); 499 ("Patient reports: I am stable"). All of those records reflect that Plaintiff did *not* experience suicidality, contrary to Dr. Levine's opinion. Notably, the most recent mental health treatment record, completed less than two and a half months before Dr. Levine completed his assessment, states that Plaintiff's attention, concentration, and memory are intact, her thought process is goal-directed, and she reports that she is feeling "stable." Tr. 499. There is no medical evidence to support the dramatic decline in Plaintiff's mental capabilities that is reflected in Dr. Levine's questionnaire.

In short, Plaintiff offers no analysis or evidence to show that her depression, anxiety, and panic disorder require that she be restricted to following uninvolved directions. For the foregoing reasons, the absence of mental limitations in the RFC is supported by substantial evidence.

    b. <u>Physical Limitations</u>

Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ failed to include limitations set forth in a Residual Functional Capacity Questionnaire that her neurologist, Dr. Margolesky, completed in March 2020. (ECF No. 10 at 28-29). In the questionnaire, Dr. Margolesky opined that Plaintiff's tremors were "moderate," and that she required a low-stress work environment and would be absent from work more than four days per month. Tr. 534-38. Dr. Margolesky issued an earlier opinion in which he concluded that Plaintiff had no limitations with respect to work-related activities. Tr. 422-23. The ALJ found Dr. Margolesky's initial opinion persuasive and his March 2020 questionnaire not persuasive "as the initial one is better supported by the record." Tr. 21. The ALJ explained that "the record indicates the claimant's motor symptoms were well-controlled [and] [h]er tremors are consistently deemed mild." Tr. 21.

The evidence that the ALJ cites, and the record as a whole, supports this characterization. In particular, Plaintiff's longitudinal medical records describe her tremors as mild and state that her symptoms are well-controlled. Tr. 431, 439-40, 434-37, 427, 517, 520. Plaintiff contends that her tremors are moderate, as Dr. Margolesky opined in March 2020, because Dr. Margolesky "diagnosed [Plaintiff's Parkinson's] progression to stage 2" in November 2019, and measured Plaintiff's resting tremor in her right hand "as a 2 on a

9

scale of 1-4" beginning in January 2018. (ECF No. 10 at 28). This evidence does not support Dr. Margolesky's March 2020 questionnaire for two reasons.

First, the Hoehn and Yahr scale, which describes the progression of Parkinson's disease, classifies Stage Two as "early disease." *Diagnoses-Rating* Scales, https://parkinsonsdisease.net/diagnosis/rating-scales-staging (last accessed January 12, 2023). It is not until Stage Four that Parkinson's is characterized as "a severely disabling disease." *Id*. Second, a score of "2" on the Unified Parkinson's Disease Rating Scale signifies "mild problems." *Id*. These descriptions are consistent with Dr. Margolesky's treatment notes which characterize Plaintiff's tremors as "mild" even though at the same time measuring her tremors as a "2" and noting that her Parkinson's is a "HY stage 2." Tr. 511-12.

Substantial evidence supports the ALJ's finding that Dr. Margolesky's March 2020 questionnaire is not persuasive. Plaintiff offers no other evidence to demonstrate that more restrictive limitations than set forth in the RFC are warranted. Accordingly, for the foregoing reasons, the Court concludes that the ALJ's RFC assessment is supported by substantial evidence.

### III.   Recommendations

Based on the foregoing, I respectfully recommend that the Court **DENY** Plaintiff's Motion for Summary Judgment, (ECF No. 10), and **GRANT** Defendant's Motion for Summary Judgment (ECF No. 14).

## IV. Objections

**No later than 14 days from the date of this Report and Recommendation**, the parties may file any written objections to this Report and Recommendation with the Honorable Kathleen M. Williams who is obligated to make a *de novo* review of only those factual findings and legal conclusions that are the subject of objections. Only those objected-to factual findings and legal conclusions may be reviewed on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985), *Henley v.* Johnson, 885 F.2d 790, 794 (11th Cir. 1989), 28 U.S.C. § 636(b)(1), 11th Cir. R. 3-1 (2016).

RESPECTFULY RECOMMENDED in chambers at Miami, Florida, this 12th day of January 2023.

_____
CHRIS McALILEY
UNITED STATES MAGISTRATE JUDGE

cc: The Honorable Kathleen M. Williams
    Counsel of record